# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# HATTIESBURG DIVISION

**MICHAEL L. WILSON, ET AL**                                                            **PLAINTIFFS**

**VERSUS**                                                **CIVIL ACTION NO. 2:06cv43KS-MTP**

**KIMBERLY-CLARK CORPORATION**                                         **DEFENDANT**

**CONSOLIDATED WITH**

**JIMMY G. TUCKER, ET AL**                                                          **PLAINTIFFS**

**VERSUS**                                                  **CIVIL ACTION NO: 2:07cv365KS-MTP**

**KIMBERLY-CLARK CORPORATION**                                        **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion for Summary Judgment **[#90]** filed on behalf of the defendant. The court, having reviewed the motion, the response, the briefs of counsel, the pleadings and exhibits on file and being otherwise fully advised in the premises finds that the motion is well taken and should be granted. The court specifically finds as follows:

The plaintiffs are sixty-nine former employees of defendant Kimberly-Clark Corporation at its Hattiesburg, Mississippi facility. Kimberly-Clark sold the Hattiesburg plant to Hattiesburg Paper Company (HPC), effective December 31, 2004. All of the former Kimberly-Clark employees remained employed at the plant with HPC under an agreement negotiated by Kimberly-Clark for their retention by HPC. As a result of an amendment to the Kimberly-Clark Corporation Severance Plan (the "Plan") ninety days prior to the sale, the terminated employees were deemed not eligible for severance

benefits under the Plan.  As a result, the former employees have filed the present suit.

This court has previously denied a Motion to Remand based on the finding that the Plan was governed by ERISA and all state law claims were preempted. The court, after denying remand, dismissed this action for failure to exhaust administrative remedies pursuant to the requirements of ERISA.  The Fifth Circuit affirmed the court's determination regarding the denial of remand and the applicability of ERISA, but found that the plaintiffs had properly stated a claim for the denial of benefits under an ERISA plan due to the futility of seeking administrative review and remanded it for development of this claim.

As the court has previously stated, this case is a claim for benefits under an ERISA plan and such is the law of the case.  *See United States v. Slanina*, 359 F.3d 356, 358 (5th Cir. 2004).  *See also, United States v. Mendez*, 102 F.3d 126, 131 (5th Cir.1996)*(citing *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983))(The [law of the case] doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case.); and *White v. Murtha*, 377 F.2d 428, 431 (5th Cir. 1967)(The law of the case rule is based on the salutary and sound public policy that litigation should come to an end.  A decision of a legal issue or issues by an appellate court establishes the law of the case and must be followed in all subsequent proceedings in the same case.).

**Kimberly-Clark Severance Pay Plan**

The Kimberly-Clark Severance Plan was originally adopted and effective as of January 1, 1998. From inception, the Plan provided that "Severance Pay shall not be paid to any Participant who . . . is terminated as part of a Group Termination, as defined in subsections 3.5(a) and(b)." Section 3.5 defined a Group Termination or Outsourcing as:

> (a) a sale or shutdown of a portion of the corporation, or
>
> (b) the outsourcing of an employee to a company other than an Employer, in which such Employee resumes an equivalent position or job as he or she had with the Employer.

Corporation" is defined as Kimberly-Clark Corporation. The Plan, from its inception, also provided a procedure for amendment:

> <u>Plan Amendments</u>. The Board may from time to time modify, alter, amend or terminate the Plan. Any action permitted to be taken by the Board under the foregoing provision may be taken by the Committee if such action:
>
> (a) is required by law, or
>
> (b) is estimated not to increase the annual cost of the Plan by more than $1,000,000, or
>
> (c) is estimated not to increase the annual cost of the Plan by more than $25,000,000 provided such action is approved and duly executed by the CEO.
>
> Any action taken by the Board or Committee shall be made by or pursuant to a resolution duly adopted by the Board or Committee and shall be evidenced by such resolution or by a written instrument executed by such persons as the Board or Committee shall authorize for that purpose.

In December 1999, Kimberly-Clark distributed a benefits communication that reinforced the provision in the 1998 Plan document. This communication explained that severance benefits are not available if "your termination is due to a sale or shutdown of a portion of the Corporation . . .."

Although the Plan was updated periodically, the relevant provision in the Plan document, for purposes of this action, remained unchanged up to and including the May 16, 2003 iteration of the Plan. In September 2004, the Plan was amended to clarify what is included in the definition of "Group Termination:"

> Group Termination or Outsourcing. Severance Pay shall not be paid to any Employee whose employment is involuntarily terminated related to
>
> (a) any separation or reorganization of the Corporation including, but not limited to, a sale, spin-off or shutdown of a portion of the Corporation, including but not limited to a portion of a mill or other location, or
>
> (b) the outsourcing of an Employee to a company other than an Employer, in which such Employee resumes an equivalent position or job as he or she had with the Employer . . . .

The defendant contends that the Plan amendment was made in accordance with the procedures set forth in the Plan document. The amendment was signed by both members of the Kimberly-Clark Severance Pay Plan Committee, Bruce J. Olsen and Lizanne Gottung, on or before September 10, 2004 and September 7, 2004, respectively. The plaintiffs do not refute this argument.

The plaintiffs concede that the amended Plan of September 2004 makes them ineligible for severance benefits. They contend that the amendment to the Plan was made after the decision to shut down the Hattiesburg plant in order to deny them the severance benefits under the 2003 Plan. According to the plaintiffs, this action by Kimberly-Clark is tantamount to fraud and bad faith and was a scheme to deprive them of ERISA benefits. They also assert that they did not receive notice of the amendment to the Plan until after they were terminated, some ninety days after the September 2004 amendment.

The defendants respond that they complied with ERISA notice requirements and that they have complied with all regulations, statutes and terms of the Plan in making the aforesaid amendment. Further, they argue that regardless of which iteration of the Plan is considered, the plaintiffs were not entitled to severance benefits under the very terms of the Plan as it relates to the sale of the Hattiesburg facility.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986). The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment. *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*,

799 F.2d 218, 222 (5th Cir. 1986).  "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment.  The dispute must be genuine, and the facts must be material."  *Id.*  "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment."  *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987).  Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial.  *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552."  *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party.  *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion.  *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).  The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues.  *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden:  the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]."  *John*, 757 F.2d at 708.  "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants'

motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In Re Municipal Bond Reporting Antitrust Lit.*, 672 F.2d 436, 440 (5th Cir. 1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'" *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

## **ANALYSIS**

The plaintiffs initially brought suit, under state law, for fraud, equitable estoppel, breach of contract and misrepresentation in Mississippi state court. Kimberly-Clark removed those claims to this court, which ultimately dismissed them and rejected the

plaintiffs' assertion that they should be remanded to the state court. *Wilson v. Kimberly-Clark Corp.*, No. 2:06cv43KS-MTP, 2007 WL 735677 (S.D. Miss. March 8, 2007) (Dkt. #34). On appeal, the Fifth Circuit affirmed the removal of the plaintiffs' state law claims, but reversed the court's dismissal on the grounds of failure to exhaust administrative remedies and held that the plaintiffs could pursue a claim for "[w]rongful denial of benefits . . . under ERISA § 502(a)(1)(B)." *Wilson v. Kimberly-Clark Corp.*, 254 F. App'x 280, 285-86 (5th Cir. 2007) (unpublished).

On a subsequent motion after remand, this court struck the plaintiffs' state law claims and their demand for a jury trial. This court concluded that the "fact that this case is a claim for benefits under an ERISA plan is the law of the case." *Wilson v. Kimberly-Clark Corp*, Nos. 2:07cv43KS-MTP, 2:07cv365KS-MTP, 2008 WL 985395, at *1 (S.D. Miss. April 8, 2008) (Dkt. 56).

As the Fifth Circuit has explained, a claim for benefits under ERISA Section 502(a)(1)(B) is governed by the terms of the plan:

> Section 502(a)(1)(B) provides an ERISA plan participant or beneficiary with a cause of action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

*Chacko v. Sabre, Inc.*, 473 F.3d 604, 609 (5th Cir. 2006). In order to prevail, therefore, the plaintiffs must demonstrate that they are each entitled to benefits under the terms of the applicable Plan document. *Haubold v. Intermedics, Inc.*, 11 F.3d 1333, 1341 (5th Cir. 1994) ("Severance plans have specific eligibility requirements which an employee must meet to receive payment.").

"Employers or other plan sponsors are generally free under ERISA, for any

-8-

reason at any time, to adopt, modify, or terminate welfare plans." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995); accord *Chacko*, 473 F.3d at 608, n.3. However, the plaintiffs argue that Kimberly-Clark, as the sponsor and administrator of the Plan, must be viewed as having a conflict of interest which prevents amendments to the Plan which, apparently, would diminish benefits to the Plan beneficiaries. This, indeed, is an odd argument and misses the mark.

In the typical ERISA case, where the fiduciary (i.e., sponsor or administrator) is given discretion to decide benefit claims, such decisions are reviewed to determine whether they are arbitrary and capricious under an abuse of discretion standard. *See Martinez v. Schlumberger, Ltd.*, 338 F.3d 407 (5th Cir. 2003). This standard applies where the fiduciary has been given specific discretionary authority by way of the benefit plan documents to determine eligibility for benefits and to construe the terms of the plan. *See Harms v. Cavenham Forest Industries, Inc.*, 984 F.2d 686, 688 (5th Cir. 1993)(quoting *Firestone Tire and Rubber Company v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989)). *See also, Todd v. AIG Life Ins.* Co., 47 F.3d 1448, 1451 (5th Cir. 1995).

In these situations, the court must first make a determination as to whether the administrator/sponsor is a "fiduciary" under 29 U.S.C. § 1002(21)(A) who is vested with "discretionary authority or discretionary responsibility in the administration of [the] plan." *See* 29 U.S.C. § 1002(21)(A)(iii). If so, the court is required to review the fiduciary's determinations under the appropriate abuse of discretion standard. *See Baker v. Metro. Life Ins. Co.*, 364 F.3d 624, 629-30 & n.12 (5th Cir. 2004).

A fiduciary's discretion to make benefit determinations in such a case is not

absolute for when there is an apparent conflict of interest between the administrator's fiduciary obligations to the Plan participants and the profit motive of the Company, the deference due the decision may be reduced in proportion to the conflict. *See Vega v. National Life Ins. Services, Inc.*, 188 F.3d 287, 297 (5th Cir. 1999)(*en banc*)("The existence of a conflict is a factor to be considered in determining whether the administrator abused his discretion in denying a claim.").

The facts of the present case do not match the argument made by the plaintiffs. The determination under question, while arguably a denial of benefits, concerns the plaintiffs' initial entitlement to benefits under the terms of the Plan and the authority of the defendant to amend the Plan. Amendment of a plan is a settlor function, and under current law, Kimberly-Clark had no fiduciary duty to participants in amending the Plan. *See Lockheed Corp. v. Spink*, 517 U.S. 882, 890, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996)("When employers [adopt, modify, or terminate welfare plans], they do not act as fiduciaries but are analogous to the settlors of a trust." (citations omitted)).

Therefore, the conflict of interest analysis pressed by the plaintiffs is not applicable to the facts of this case. As previously stated, the defendant had the right to change or terminate ERISA benefits in compliance with the Plan documents and ERISA law and regulations. The plaintiffs do not dispute that the Plan was properly amended according to the Plan's amendment procedure on September 10, 2004.

The plaintiffs also argue that they did not receive timely notice of the amendment prior to the sale of the facility, but provide no legal basis for requiring such notice. Indeed, as the defendant points out, no notice was required. The defendant argues that the changes to the wording of Section 3.5 of the Plan are not material and therefore do

not require any notice to participants.  However, even if notice were required, the deadline for providing such notice was well after the plaintiffs' December 31, 2004 termination.  ERISA requires only that a summary of material modifications be distributed within 210 days of the end of the plan year in which the change occurred.  *See* 29 U.S.C. § 1024(b)(1)(B).  Therefore, a summary of material modifications reflecting the September 10, 2004 amendment, if required at all, would not have been due to participants until the summer of 2005.

Further, although the amendment at issue here did not arguably impact the plaintiffs' right to benefits, as the wording of the Plan prior to the 2004 amendment likely excluded them from entitlement to severance pay, the Fifth Circuit has specifically rejected the argument that eleventh-hour amendments to severance pay plans eliminating benefits for employees about to be terminated are impermissible or are subject to heightened notice requirements.  *See Whittemore v. Schlumberger Tech. Corp.*, 976 F.2d 922 (5th Cir. 1992).

As alluded to above, even if the 2003 Plan governed, the plaintiffs would not be entitled to severance pay under the terms of the Plan.  The 2003 Plan provides: "Severance Pay shall not be paid to any Participant who . . . is terminated as part of a Group Termination, as defined in subsections 3.5(a) and (b)."  Section 3.5 of the 2003 Plan defined a Group Termination or Outsourcing as:

> (a) a sale or shutdown of a portion of the corporation, or
>
> (b) the outsourcing of an employee to a company other than an Employer, in which such Employee resumes an equivalent position or job as he or she had with the Employer.

It is not disputed that all of the plaintiffs were terminated by Kimberly-Clark as a

result of the sale of the Hattiesburg Facility on December 31, 2004.  The court finds,

contrary to the plaintiffs' assertions, that the sale of that facility constitutes a "sale . . . of

a portion of the Corporation" under the 2003 Plan.  The plaintiffs' argument that this was

a sale of assets versus a sale of a portion of the corporation is to no avail.  Thus,

whether the 2003 Plan or the amended 2004 Plan applies, the plaintiffs were not

entitled to severance pay under the Plan.

IT IS THEREFORE ORDERED AND ADJUDGED that the  Motion for Summary

Judgment **[#90]** filed on behalf of the defendant is granted and this matter is dismissed

with prejudice.  A separate judgment shall be entered herein in accordance with Rule

58, Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this the 2nd day of April, 2009.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE